676 S.E.2d 722

Chad Wyman MEAD, Claimant,

v.

JESSEX, INC., d/b/a Midlands Glass; Uninsured Employers' Fund, Employers, Defendants,

of whom the Uninsured Employers' Fund is the Appellant,

and Chad Wyman Mead is the Respondent.

No. 4525.

Court of Appeals of South Carolina.

Heard Feb. 4, 2009.

Decided April 2, 2009.

Rehearing Denied June 1, 2009.

526

---

Robert M. Cook, II, of Batesburg–Leesville, for Appellant.

Ann Mickle, of Rock Hill, and Tom Young, Jr., of Aiken, for Respondent.

GEATHERS, J.:

In this workers' compensation case, the Uninsured Employers' Fund (the Fund) appeals the circuit court's order reversing the Appellate Panel's denial of Chad W. Mead's (Mead) application for a change of condition for the worse to his left hip and leg allegedly caused by his original compensable injury. The Fund asserts the circuit court erred in failing to affirm the Appellate Panel's finding that the claim for a change of condition was barred by *res judicata.* We agree.

## FACTUAL AND PROCEDURAL BACKGROUND

In late January or early February 2000, Mead sustained an on-the-job injury. Mead alleged injuries to his right leg, right hip, and back arising out of and in the course of his employment with Jessex Inc., d/b/a Midlands Glass (Jessex). Initially, Jessex and the Fund denied Mead's claim, contending the injury was not sustained on the job.

The first hearing regarding Mead's compensation occurred on November 7, 2001, before Commissioner Holly Saleeby Atkins. On April 1, 2002, Commissioner Atkins issued her order finding that Mead "sustained an injury by accident to his right hip and right leg arising out of and in the course and scope of his employment," and that the injury was compensable under the South Carolina Workers' Compensation Act. Commissioner Atkins further found that Mead had a preexisting condition of avascular necrosis in his right leg and hip which was aggravated by his compensable injury. However, Commissioner Atkins specifically found Mead did not sustain a compensable back injury.

On March 21, 2003, Commissioner, J. Alan Bass, presided over a second hearing regarding Mead's injuries. Mead sought a final determination of the extent of disability he sustained to his right lower extremity and a determination of disability to his back as a result of the original compensable injury. Mead reached maximum medical improvement after the first hearing and the commissioner determined that he had a sixty percent loss of use of his right lower extremity.

At the March 2003 hearing, Mead testified that he began experiencing pain in his left hip and left leg in December 2002 or January 2003 as a result of having to shift his weight from

his right leg to his left leg when standing. Mead contended that he bore "pretty much all" of his weight on his left leg. When Commissioner Bass specifically asked Mead if he believed his left hip and left leg problems arose from shifting his weight from his right to left leg, Mead responded, "I personally do."

Commissioner Bass found that the total right hip replacement Mead underwent following the first hearing caused Mead to have an altered gait. Furthermore, the "altered gait caused [Mead] to develop lower back pain." Commissioner Bass determined the back pain Mead complained of was directly related to his original compensable injury. Thus, the back pain was also a compensable injury.

Further, Commissioner Bass rejected Jessex's and the Fund's contention that Mead's back claim was barred by *res judicata;* rather, he found that Mead's "back claim is based on an altered gait which was not before the Commissioner at the November 7, 2001 hearing and did not manifest itself until after the November 7, 2001 hearing." However, Commissioner Bass specifically stated in his factual findings and conclusions of law that Mead failed to prove that his left hip symptoms were related to the original compensable right hip and right leg injury that occurred in 2000. Neither party appealed Commissioner Bass' order.

Subsequently, on June 2, 2006, there was a third hearing before Commissioner J. Michelle Childs. At this hearing, Mead alleged a change of condition for the worse, seeking "a finding that his left hip problems are causally related to his original injury such that the left hip problems and the treatment needed for the left hip will be compensable."[1] Mead presented the opinion of Dr. Holford, the authorized treating

---

1. S.C.Code Ann. section 42–17–90 (Supp.2008) in the South Carolina Workers' Compensation Act provides a mechanism for reopening an award if there has been a change in condition. That section provides in relevant part:

 (A) On its own motion or on the application of a party in interest on the ground of a change in condition, the commission may review an award and on that review may make an award ending, diminishing, or increasing the compensation previously awarded, on proof by a preponderance of the evidence that there has been a change of condition caused by the original injury, after the last payment of compensation.

physician, who based his opinion on a review of the March 21, 2003 hearing transcript, Mead's past medical records, and a physical examination. Commissioner Childs relied on Dr. Holford's opinion during the hearing.

In Dr. Holford's questionnaire responses, dated October 29, 2004, he stated that the pain Mead complained of during the hearing before Commissioner Bass was due to the natural progression of his avascular necrosis. Later in the same report, Dr. Holford opined that, based on his treatment and examination of Mead, Mead's complaints at the time of the 2004 report were "related to an aggravation of his pre-existing avascular necrosis of the left hip caused by his altered gait."

Commissioner Childs stated in her factual determinations that Mead's change of condition claim for his left hip and leg was an entirely new problem that manifested itself after the March 21, 2003 hearing. Additionally, Commissioner Childs found: "The authorized treating physician Dr. Douglas Holford has verified that he read the hearing transcript of March 21, 2003[,] and his opinion to a reasonable degree of medical certainty is that the *current* left hip complaints are new and *different* from the left hip symptoms prior to March 21, 2003." (emphasis in original). Commissioner Childs found that Mead's claim was compensable and the Fund's *res judicata* argument failed.

The Fund appealed Commissioner Childs' findings to the Appellate Panel. The Appellate Panel determined the "order of Commissioner Childs [ ] must be reversed because it [was] based upon legal error in finding that [Mead's] injury to his left hip and left leg were compensable." Further, the Appellate Panel determined that Mead's left hip injury claim was barred by *res judicata* because the claim was previously ruled on by Commissioner Bass, and because the court in *Owenby v. Owens Corning Fiberglas,* 313 S.C. 181, 437 S.E.2d 130 (Ct. App.1993) held that a change of condition claim based on an alleged worsening of condition, that was previously ruled on, was barred by *res judicata.* The Appellate Panel made the following findings:

1. That the claimant raised the issue of the compensability of the alleged injury to his left hip at the hearing on March 21, 2003. This finding of fact is supported by the

transcript of that hearing, as well as the claimant's Form 50 and prehearing brief.

2. That the June 3, 2003, order finds, concludes and orders that the alleged injury to the claimant's left leg and left hip were not compensable. This finding of fact is supported by the order in question, including finding of fact number 6 and conclusion of law number 7.

3. That the claimant did not appeal the order of June 3, 2003, at all and specifically not with regard to that part of the order ruling that the alleged injury to the left leg and left hip were not compensable. This finding of fact is not disputed and, in any event, is clearly shown by the absence in the file of the Commission of any Form 30 appealing that order.

4. That the unappealed order of June 3, 2003, bars the claimant's current claim for the compensability of the left hip and left leg under the doctrine of *res judicata.*

Mead appealed the Appellate Panel's decision to the circuit court. The circuit court reversed the Appellate Panel, finding the Appellate Panel erred as a matter of law when it ruled Mead's application for compensation for his left leg and left hip condition was precluded by res *judicata.* The circuit court found that the instant case was controlled by *Estridge v. Joslyn Clark Controls, Inc.,* 325 S.C. 532, 482 S.E.2d 577 (Ct.App.1997).[2] In addition, the circuit court stated that the Fund and the Appellate Panel "erroneously assume that [Mead's] left leg and hip symptoms are the same as those existing prior to and following the March 21, 2003 hearing." The court found Mead's post-March 21, 2003 symptoms were compensable because they fell within the definition of a change of condition, as defined by *Estridge* and recognized in *Owenby.* In reaching its conclusion, the circuit court relied on Dr. Holford's opinion during the hearing before Commissioner Childs: "The left leg and hip injuries at issue here have not been litigated previously, nor were they introduced in the underlying action, because the change of condition did not yet

---

2. In *Estridge,* this Court held that a mental condition that is induced by a compensable physical injury is causally related to that physical injury, and thus may be compensated in a change of condition workers' compensation proceeding as part of the original injury. *Id.*

exist. Dr. Holford has confirmed this with his medical opinion—the only evidence in this record."

Furthermore, the circuit court stated that the Appellate Panel erred by focusing its reasoning on Commissioner Bass' unappealed order. The circuit court ruled that Mead's claim was for a change of condition—new symptoms manifesting in the same body part—and therefore, the claim was not barred by res *judicata* pursuant to *Owenby* and *Estridge.* This appeal followed.

## STANDARD OF REVIEW

The South Carolina Administrative Procedures Act establishes the standard of review for decisions by the Appellate Panel of the Workers' Compensation Commission. *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981); *Thompson v. S.C. Steel Erectors,* 369 S.C. 606, 611, 632 S.E.2d 874, 877 (Ct.App.2006).

S.C.Code Ann. § 1–23–380 (Supp.2008) provides that in judicial review of a decision of an administrative agency,

> The court may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: [ ](d) affected by other error of law; (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.

In reviewing workers' compensation decisions, the appellate court ascertains "whether the circuit court properly determined whether the [A]ppellate [P]anel's findings of fact are supported by substantial evidence in the record and whether the [P]anel's decision is affected by an error of law." *Baxter v. Martin Bros., Inc.,* 368 S.C. 510, 513, 630 S.E.2d 42, 43 (2006) (citations omitted). " 'Substantial evidence' is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached to justify its action." *Clark v. Aiken Cty. Gov't,* 366 S.C. 102, 107, 620 S.E.2d 99, 101 (Ct.App.2005).

532

 "Under our scope of review, the findings of the commission will not be set aside if they are supported by substantial evidence and not controlled by error of law." *Estridge*, 325 S.C. at 536, 482 S.E.2d at 579. The circuit court may reverse or modify the decision of the Appellate Panel if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are affected by error of law or are clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. *Thompson*, 369 S.C. at 612, 632 S.E.2d at 878. Accordingly, an appellate court may not "substitute its judgment for that of the [Appellate Panel] as to the weight of the evidence on questions of fact." *West v. Alliance Capital*, 368 S.C. 246, 251, 628 S.E.2d 279, 282 (Ct.App.2006).

## LAW/ANALYSIS

 The Fund asserts the circuit court erred in failing to affirm the Appellate Panel's determination that the claim for a change of condition was barred by *res judicata*. We agree.

 The doctrine of *res judicata* prevents the relitigation of issues previously decided between the same parties, and it is shown if (1) the identities of the parties are the same as in the prior litigation; (2) the subject matter is the same as in the prior litigation; and (3) there was a prior adjudication of the issue by a court of competent jurisdiction. *Johnson v. Greenwood Mills, Inc.*, 317 S.C. 248, 250–51, 452 S.E.2d 832, 833 (1994). All three elements are present in the case at hand.

The Appellate Panel correctly determined that Mead's claim for a change of condition was barred by *res judicata* because the left hip and leg symptoms alleged to Commissioner Bass and found not compensable, were the same symptoms subsequently brought before Commissioner Childs in the change of condition proceeding. As such, *res judicata* barred relitigation of the issue of compensability for Mead's left hip and leg symptoms. Mead's initial Form 50, dated August 8, 2002, and amended prior to the hearing before Commissioner Bass, stated that Mead sustained an accidental injury to his back and both legs. At the hearing before Commissioner Bass, Mead complained of left hip and leg pain that resulted from having to shift his weight from his right leg to his left leg. In

the order dated June 3, 2003, Commissioner Bass specifically found that "Claimant failed to prove his left leg symptoms, which appeared three years after the original injury, were related to the original injury." He also concluded as a matter of law that "Claimant fails to prove that the left hip symptoms which appeared three years after the original injury are related to the original injury." It is undisputed that Mead did not appeal the order of Commissioner Bass. Therefore, it is the law of the case that Mead's left hip and left leg claim was not compensable. *Brunson v. American Koyo Bearings,* 367 S.C. 161, 165–66, 623 S.E.2d 870, 872 (Ct.App.2005) (factual findings and conclusions of law of the single commissioner become the law of the case when not challenged on appeal).

After the hearing before Commissioner Bass, Mead filed a second Form 50, dated January 13, 2004, claiming that he sustained a change of condition to his left hip, left leg, and back. The doctrine of *res judicata* barred this second attempt at a claim for the left hip and left leg symptoms which were initially found not to be compensable.

Moreover, Mead's claim for compensability of his left hip and left leg condition on the basis of a change of condition is controlled by this Court's decision in *Owenby v. Owens Corning Fiberglas,* 313 S.C. 181, 437 S.E.2d 130 (Ct.App.1993). In that case, this Court held that the doctrine of *res judicata* barred the award of workers' compensation benefits for Owenby's psychological problems, despite her claim of a change of condition. 313 S.C. at 183, 437 S.E.2d at 131–32. In *Owenby,* the commissioner awarded compensation for Owenby's injury to her finger but, because he found her evidence not credible, denied compensation for her alleged psychological problems as he found any psychological problems suffered by Owenby were not proximately caused by the injury to her finger. *Id.* When Owenby later sought an increase in benefits due to the amputation of an additional portion of her finger, she also alleged that her psychological condition had worsened. *Id.* This Court held that her attempt to obtain compensation for her psychological condition was barred by *res judicata. Id.* As the commissioner had previously determined that any psychological problems Owenby may have had were not related to the injury to her finger, she could not relitigate the same issue based on a change of condition. *Id.* This Court also

noted that the statute allowing review based on a change of condition applies only to claims that have been previously found compensable. *Id.*[3]

Likewise, in the instant case, Mead is barred from relitigating the same issue regarding his left hip and left leg. There was a prior finding of non-compensability regarding Mead's left hip and left leg symptoms by Commissioner Bass, which was not appealed, and therefore, under the *Owenby* standard, the change of condition statute does not apply to his claim.

Thus, we find that the circuit court erred in reversing the Appellate Panel's decision that Mead's claim for a change of condition was barred by *res judicata.*

### CONCLUSION

Accordingly, the circuit court's order is

**REVERSED.**

SHORT and THOMAS, JJ., concur.

---

3. *See Travelers Ins. Co. v. Edge,* 114 Ga.App. 301, 151 S.E.2d 170 (1966) (*res judicata* barred a subsequent claim for a change of condition involving an injury that was previously found not to be compensable).