768 S.E.2d 222

**Cindy DOZIER, Employee, Appellant,**

v.

**AMERICAN RED CROSS, Employer, and Sedwick CMS, Carrier, Respondents.**

Appellate Case No. 2012–213606.

No. 5272.

Court of Appeals of South Carolina.

Heard May 6, 2014.

Decided Sept. 17, 2014.

Rehearing and Rehearing En Banc Denied Jan. 28, 2015.

Stephen Benjamin Samuels, of Samuels Law Firm, LLC, of Columbia, for Appellant.

Wesley Jackson Shull, of Willson Jones Carter & Baxley, PA, of Greenville, for Respondents.

WILLIAMS, J.

In this workers' compensation appeal, Cindy Dozier argues the Appellate Panel of the Workers' Compensation Commission (Appellate Panel) erred in denying her claim for permanent total disability pursuant to section 42–9–10 of the South Carolina Code (Supp.2013). In addition, she contends the Appellate Panel improperly applied the doctrine of res judicata to bar her claim for Complex Regional Pain Syndrome (CRPS/RSD)[1] when the doctrines of waiver and estoppel should have prevented American Red Cross (ARC) from denying its existence. Last, Dozier contends the Appellate Panel erred in relying on medical opinions that Dozier did not suffer from CRPS/RSD. We affirm.

**FACTS/PROCEDURAL HISTORY**

Dozier sustained an admitted injury by accident on January 17, 2008, while working as a phlebotomist for ARC. On October 10, 2008, Dozier filed a Form 50 and Form 15, asserting injuries to both arms and entitlement to temporary compensation. Dozier contended the repetitive heavy lifting at ARC caused her to develop bilateral carpal tunnel syn-

---

1. CRPS, also known as Reflex Sympathetic Dystrophy (RSD), "is a rare condition affecting the sympathetic nervous system, usually in an extremity, resulting in ongoing cycles of extreme pain. It is often triggered by an accident, surgery, or other injury." *See Mizell v. Glover,* 351 S.C. 392, 397 n. 1, 570 S.E.2d 176, 178 n. 1 (2002).

drome. In lieu of a hearing, the parties entered into a consent order, wherein ARC stipulated Dozier sustained a compensable injury to her left wrist. In addition, ARC authorized treatment for her left wrist as well as a medical determination of her work status and the source of her right wrist pain.

Dozier filed another Form 50 on August 6, 2009, alleging injuries to both her arms, her neck, her back, and her psyche. In response, ARC filed a Form 51 on August 14, 2009, admitting an injury to her left wrist, but denying injuries to her right arm, her neck, and her back. ARC contended she achieved maximum medical improvement (MMI) on August 10, 2009, when ARC's initial authorized treating physician placed her at MMI. As a result, ARC claimed the only remaining issue was the extent of permanent disability to Dozier's left wrist.

Single Commissioner David Huffstetler held a hearing on November 3, 2009. At the hearing, he summarized the parties' arguments as follows:

> [Dozier] takes the position that she suffered injuries to both arms, also to her neck and back.... And [she] seeks additional treatment for her arms, in particular for [CRPS/RSD] and asks that Dr. Moore be assigned as her treating physician. The defense admits an injury to the left arm only. They deny all other body parts and I assume that [ARC] also den[ies] the request for Dr. Moore to be the treating physician.

Commissioner Huffstetler subsequently issued an instruction to Dozier's counsel to draft a proposed order stating: "[Dozier] suffered injuries to both arms, including [CRPS/RSD], and her neck. [ARC] to pay all causally-related medical bills to date and additional treatment to be directed by Dr. Moore." Commissioner Huffstetler then issued an order on December 17, 2009, which he personally drafted, finding Dozier had injured both of her arms in the course of her employment with ARC. Because she continued to be disabled, Commissioner Huffstetler held she was entitled to temporary total disability as well as continuing medical treatment for both of her arms through a physician of ARC's choosing. The order made no findings regarding Dozier's back, neck, or CRPS/RSD claims.

Dozier timely filed a notice of appeal with the Appellate Panel and argued Commissioner Huffstetler erred in: (1) failing to order ARC to pay past causally–related medical treatment; (2) allowing ARC to designate a treating physician when ARC willfully failed to provide medical treatment and required Dozier to submit to five independent medical evaluations; (3) failing to assess a mandatory 25% penalty for improper termination of temporary compensation; (4) failing to find Dozier injured her neck and back; and (5) admitting a physician's report into evidence. During the pendency of the appeal, ARC agreed to designate Dr. Timothy Zgleszewski, of Palmetto Spine and Sports Medicine, as Dozier's authorized treating physician. As a result, Dozier withdrew her complaint regarding ARC's selection of her authorized treating physician.

On November 23, 2010, the Appellate Panel affirmed Commissioner Huffstetler's order as modified, requiring ARC to pay for all causally-related medical treatment before December 24, 2008, and after June 29, 2009. The Appellate Panel did not rule on the issues of Dozier's alleged injuries to her neck and back nor did it determine whether her CRPS/RSD was a work-related condition.[2] Neither party appealed this order.

Over the next two years, Dozier continued to be treated at ARC's expense with Dr. Zgleszewski. During that time, Dr. Zgleszewski referred her to Dr. Gerald Shealy, an orthopedist at the Medical University of South Carolina, for carpal tunnel surgery. Dr. Shealy treated her from December 2, 2010, until May 23, 2011, at which time he concluded she had attained MMI for her carpal tunnel syndrome. Dr. Shealy also assigned Dozier a 5% impairment rating to both hands and "at her request, she [wa]s provided with a permanent restriction of 5 pounds." On August 9, 2011, Dr. Zgleszewski concluded Dozier had attained MMI and assigned a 5% impairment

---

**2.** Dozier did not specifically raise CRPS/RSD in her issues on appeal to the Appellate Panel; however, she raised Commissioner Huffstetler's failure to address her neck and back injuries that were necessarily related to her claim for CRPS/RSD. Also, the "Statement of the Case" portion of the order reflects Dozier's claim she suffered from work-related neck and back injuries as well as two work-related conditions, carpal tunnel syndrome and CRPS/RSD.

rating to both arms based on her carpal tunnel and a 12% impairment rating to her central nervous system based on her CRPS/RSD diagnosis.

ARC then requested a hearing on September 2, 2011, seeking to terminate Dozier's temporary compensation and to determine her permanent disability. After both parties drafted prehearing briefs, ARC withdrew its request for a hearing. Dozier filed a subsequent Form 50 on October 17, 2011, alleging injuries to both arms as well as her central nervous system and requesting a finding of permanent and total disability. ARC responded, admitting injuries only to the "bilateral wrists."

In response to Dozier's Form 50, Single Commissioner Gene McCaskill held a hearing on February 6, 2012. At the hearing, Dozier contended she was permanently and totally disabled because the five-pound work restrictions imposed upon her by Dr. Shealy and Dr. Zgleszewski prevented her from returning to the workforce. ARC responded, arguing Dozier was only entitled to permanent partial disability to each wrist because she failed to establish she suffered from CRPS/RSD, which was necessary to bring her injury within the ambit of permanent and total disability. Specifically, ARC claimed Dozier had chosen not to pursue her CRPS/RSD claim in her December 2009 appeal, as it was neither raised to nor ruled upon by the Appellate Panel; thus, res judicata barred Dozier from asserting it. In the alternative, ARC argued the preponderance of the evidence did not support a medical diagnosis of CRPS/RSD.

At the hearing before Commissioner McCaskill, Dozier testified she sustained injuries to both her wrists while working as a phlebotomist for ARC. After her injuries, she stated ARC agreed for Dr. Zgleszewski to be her authorized treating physician for CRPS/RSD. Dozier never paid for any of her treatments with Dr. Zgleszewski, stating instead that ARC paid for Dr. Zgleszewski to administer three stellate ganglion blocks as well as four carpal tunnel injections in each of her wrists.

Dozier testified she experienced pain in her wrists, hands, shoulders, and neck on a constant basis. Dozier claimed her hands were almost always cold, her nails were brittle, she

experienced frequent hair loss, and her skin was "blotchy sometimes." When questioned about her activities, she stated her husband and daughters did all the cooking and housework. Because she was unable to work, she spent most of her days at home, where she would read her Bible and watch television. Dozier testified she visited the South Carolina Department of Vocational Rehabilitation in an effort to return to work, but it was unable to offer her any services because of her five-pound lifting restriction.

Dr. Zgleszewski first evaluated Dozier on September 8, 2009. During his deposition, Dr. Zgleszewski stated he diagnosed Dozier with carpal tunnel syndrome, CRPS Type II, and myofascial pain. He affirmed that ARC had never disputed or refused to pay for any of Dozier's treatments, including the stellate ganglion blocks. Dr. Zgleszewski stated a patient would only receive a stellate ganglion block to reduce the pain associated with CRPS/RSD.

Dr. Zgleszewski based his CRPS/RSD diagnosis on Dozier's fulfillment of all the criteria set forth in the International Association for the Study of Pain (IASP). In explaining his diagnosis of CRPS/RSD, he stated that the triple phase bone scan indicated a slight increase in blood flow, which can indicate CRPS/RSD. When questioned by ARC's counsel, Dr. Zgleszewski acknowledged he did not note in his medical reports that Dozier experienced cyanotic or mottled skin,[3] sudomotor changes, trophic changes, soft tissue atrophy, joint stiffness, nail changes, or hair loss. Dr. Zgleszewski agreed that, under the Fifth Edition American Medical Association (AMA) Guides for Impairment, Dozier would not qualify for CRPS/RSD, but he stated most physicians who treat CRPS/RSD disagree with the AMA's requirements for that diagnosis.

Dr. Zgleszewski testified unequivocally that the IASP was authoritative in his field for diagnosing CRPS/RSD, and it would be inappropriate for a board-certified pain management physician to base a diagnosis on the criteria listed in the AMA for diagnosing CRPS/RSD. Based on his continued treatment of Dozier, he explained how Dozier met all the criteria for

---

3. Cyanotic skin is bluish in color based on a lack of oxygen. Mottled skin is swollen and marked by small indentations.

CRPS/RSD pursuant to IASP. Considering Dozier's reported symptomatology, her medical records, and her physical exam, Dr. Zgleszewski assigned her a 5% impairment to the left and right upper extremities based on her carpal tunnel syndrome and a 12% impairment to her central nervous system based on CRPS/RSD.

Prior to Dr. Zgleszewski's appointment as Dozier's authorized treating physician, Dr. Blake Moore independently treated Dozier from August 2008 until July 2009. Dr. Moore reported that a nuclear medicine bone scan revealed bilateral wrist uptake, which he found to be "consistent with the diagnostic impression of a Complex Regional Pain Syndrome as previously suspected." Dr. Moore subsequently referred Dozier to First Choice Healthcare, where she was treated by Dr. Lisa Mancuso and Dr. George Bitting from January 2009 until August 2009.

Unlike Dr. Zgleszewski and Dr. Moore, Dr. Mancuso and Dr. Bitting opined that Dozier did not suffer from CRPS/RSD. After her initial evaluation of Dozier, Dr. Mancuso stated in a letter to Dr. Moore that she did not believe Dozier suffered from CRPS/RSD because (1) there was no specific precipitating event; (2) both of her limbs were affected, which was not typical with CRPS/RSD; and (3) she had no sudomotor[4] changes. Similar to Dr. Mancuso, Dr. Bitting testified during his deposition that he did not believe Dozier was suffering from CRPS/RSD. Dr. Bitting based his opinion on her triple phase bone scan, which was relatively normal, and Dozier's experiencing pain in both arms, as opposed to only one extremity. Further, Dr. Bitting stated a specific traumatic event typically triggered CRPS/RSD, and it was unlikely for Dozier to first experience symptoms almost two years after her accident. When questioned, Dr. Bitting admitted he had not examined Dozier in over two years and could not speak to her current condition or diagnosis.

Dozier also treated with Dr. Shealy from December 2010 until May 2011. He performed carpal tunnel release surgery on both hands and released her at MMI on May 23, 2011. In Dr. Shealy's medical notes, he stated, "It is my opinion that

---

4. A patient experiences sudomotor changes when his or her skin is dry or overly moist.

[Dozier] has a 5% permanent residual impairment to her dominant right hand and a 5% permanent residual impairment to her nondominant left hand secondary to surgery and the carpal tunnel decompression. At her request, she is provided with a permanent restriction of 5 pounds." When questioned during his deposition about the weight lifting restriction in his report, Dr. Shealy stated he remembered Dozier specifically requesting a five-pound lifting restriction. Dr. Shealy testified he did not typically assign a permanent weight restriction because most of his patients are able to resume their normal activities after the surgery. However, Dr. Shealy admitted he could have refused to assign that weight restriction, despite Dozier's request.

Several vocational reports were introduced into evidence regarding Dozier's ability to work after her injuries. Dr. Robert Brabham, of Psychological and Training Services, P.A., evaluated Dozier on October 13, 2009. He concluded that based on her work-related injuries and the ensuing limitations on nearly any use of her hands, she was unable to effectively perform the essential duties in any gainful work activity. Glen Adams, a vocational consultant with Adams & Wilkinson, evaluated Dozier on August 30, 2011. Adams submitted a sixteen-page report in which he concluded Dozier was unqualified for any jobs in her labor market based on her five-pound lifting capacity. Adams noted that Dozier is limited to "sedentary" employment, although she did not meet the full definition of "sedentary" because this restriction required lifting, pushing, and pulling up to *ten* pounds on an occasional basis.

Last, James Myers, a certified rehabilitation counselor, submitted a report to ARC regarding suitable jobs for Dozier in her geographic labor market. At ARC's request, Myers evaluated Dozier on September 26, 2011. The results Myers submitted to ARC were based on her previous vocational experiences as well as her "sedentary" work restriction. Myers concluded Dozier qualified for several alternative employment opportunities, including (1) a sorter, (2) a customer service representative, (3) an industrial order clerk, (4) a greeter at Wal–Mart, (5) a collection clerk, and (6) an EKG technician. Based on the results of his labor market survey, Myers opined she would qualify for all these positions.

After hearing testimony from all parties and considering the evidence presented at the hearing, Commissioner McCaskill issued an order on May 24, 2012. In his order, Commissioner McCaskill found the following: (1) Dozier could not relitigate the issue of CRPS/RSD based on res judicata, and even if she could, she failed to prove by a greater weight of the evidence that she suffered from CRPS/RSD as a result of her initial compensable injury; (2) Dozier reached MMI on August 9, 2011; (3) Dozier was not permanently and totally disabled because work was available that would allow her to work under her five-pound lifting restriction; (4) Dozier sustained a 20% permanent partial disability to each arm; and (5) Dozier was entitled to ongoing future pain management treatment and appropriate physician follow-up visits.

Dozier appealed to the Appellate Panel, which affirmed the single commissioner in full. This appeal follows.

## STANDARD OF REVIEW

The South Carolina Administrative Procedure Act (APA) governs appeals from the decisions of the Appellate Panel. *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981). Under the scope of review established in the APA, this court may not substitute its judgment for that of the Appellate Panel as to the weight of the evidence on questions of fact. S.C.Code Ann. § 1–23–380(5)(e) (Supp.2013). However, we may reverse or modify the Appellate Panel's decision if the appellant's substantial rights have been prejudiced because the decision is affected by an error of law or is "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." *Id.*

Our supreme court has defined substantial evidence as evidence that, in viewing the record as a whole, would allow reasonable minds to reach the same conclusion that the Commission reached. *Lark,* 276 S.C. at 135, 276 S.E.2d at 306. "Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence that, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action." *Taylor v. S.C. Dep't of Motor Vehicles,* 368 S.C. 33, 36, 627 S.E.2d 751, 752 (Ct.App.2006) (internal quotation marks omitted). "The mere

possibility of drawing two inconsistent conclusions from the evidence does not prevent a finding from being supported by substantial evidence." *Olson v. S.C. Dep't of Health & Envtl. Control,* 379 S.C. 57, 63, 663 S.E.2d 497, 501 (Ct.App.2008).

## APPLICABLE LAW

### 1. Permanent and Total Disability

■ Dozier first claims the Appellate Panel erred in denying her claim for permanent and total disability because ARC presented no credible evidence any employment was available based on her five-pound lifting work restrictions. We disagree.

A claimant is entitled to permanent and total disability benefits "[w]hen the incapacity for work resulting from an injury is total." S.C.Code Ann. § 42–9–10(A) (Supp.2013). Our supreme court explained this concept in *Stephenson v. Rice Services, Inc.*:

> There are two situations in which the [Appellate Panel] can find a claimant totally disabled. First, for certain conditions resulting from work-related injuries, a claimant is deemed totally disabled and need not demonstrate loss of earning capacity to recover workers' compensation benefits. *See, e.g.,* S.C.Code Ann. § 42–9 –10 (Supp.1994) (classifying loss of certain limbs and body parts as total disability as a matter of law; classifying as total disability paraplegia, quadriplegia, and physical brain damage resulting from compensable injuries).... Under the circumstances in which a worker is deemed totally disabled, the medical model of workers' compensation predominates.

> In contrast, the earning impairment model predominates when a worker is not statutorily deemed totally disabled. Under this model, the [Appellate Panel] may predicate a finding of total disability on the claimant's complete loss of earning capacity as a result of a work-related injury. *See* S.C.Code Ann. § 42–1–120 (1985) ("The term 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."); S.C.Code Ann. § 42–9–10 (Supp.1994) ("When the incapacity for work resulting from an injury is total, the employer shall pay ... to the injured

employee during the total disability....") .... Employees who because of a work–related injury can perform only limited tasks for which no reasonably stable market exists are considered totally disabled notwithstanding their nominal earning capacity.

323 S.C. 113, 117–18, 473 S.E.2d 699, 701–02 (1996) (emphasis omitted) (footnotes omitted) (citations omitted).

Because Dozier's 5% impairment rating does not per se equate to permanent and total disability under section 42–9–10, the relevant question before the Appellate Panel was whether Dozier had the ability to perform services other than those that are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist. *See Wynn v. Peoples Natural Gas Co.*, 238 S.C. 1, 12, 118 S.E.2d 812, 818 (1961). The Appellate Panel held the following regarding whether Dozier was permanently and totally disabled:

This Panel finds [Dozier] is not permanently and totally disabled due to the fact that work is available that would allow her to work under the 5 pound weight restriction Dr. Shealy and Dr. Zgleszewski rendered her for her compensable carpal tunnel syndrome. In addition, Dr. Bitting opined that Claimant could return to work without any work restrictions. In arriving at this finding, this Panel puts great weight on the report of James Myers. This Panel also took into account the fact that Claimant admitted she sought no employment since being released by her doctors.

The Appellate Panel found Dozier was not permanently and totally disabled based on its conclusion that employment opportunities were available to her within the five-pound lifting restriction placed upon her by two doctors, Dr. Shealy and Dr. Zgleszewski. The Appellate Panel, as the ultimate factfinder, operated within its discretion when it cited to and relied upon these doctors in making its decision. *See Mullinax v. Winn–Dixie Stores, Inc.*, 318 S.C. 431, 435, 458 S.E.2d 76, 78 (Ct.App.1995) ("In a workers' compensation case, the [Appellate Panel] alone is the ultimate factfinder. Where the medical evidence conflicts, the findings of fact of the [Appellate Panel] are conclusive.").

The Appellate Panel specifically made its finding in reliance on the five-pound lifting restriction imposed by Dr. Shealy and Dr. Zgleszewski and referenced Myers' report in coming to this conclusion. We find the Appellate Panel appropriately weighed all the evidence before it and chose to rely on Dr. Shealy's and Dr. Zgleszewski's medical opinions.[5] *See Stokes v. First Nat'l Bank*, 306 S.C. 46, 50, 410 S.E.2d 248, 251 (1991) ("Regardless of conflict in the evidence, either of different witnesses or of the same witness, a finding of fact by the [Appellate Panel] is conclusive.").

The Appellate Panel's reliance on these medical opinions is also supported by James Myers' report, which presented jobs within Dozier's weight restrictions. Myers listed twelve jobs he concluded Dozier qualified for based on her education, prior vocational experience, geographic location, and physical work restriction of "sedentary." Myers stated he relied upon Dr. Shealy's medical opinion and Dozier's previous life experiences when he identified possible alternative employment opportunities. To that end, Myers specifically noted Dr. Shealy placed a five-pound restriction upon Dozier at her own request. Because Myers relied upon Dr. Shealy's assessment of and restrictions placed upon Dozier, we find it reasonable to conclude the employment opportunities Myers generated for Dozier were also within the five-pound weight restriction.

Dozier contends on appeal that none of these potential employment opportunities were within her five-pound lifting restriction and specifically cites to the Wal–Mart greeter job to discredit Myers' report. Dozier claims the essential function of the greeter job is "frequently lifting, placing, and deactivating items weighing up to 10 pounds without assistance, and regularly lifting merchandise over 10 pounds with team lifting," which she contends is outside her work restrictions. We agree that Dozier's restrictions would not make her a viable candidate for this position; however, Myers submitted eleven other positions that the single commissioner and Appel-

---

5. We find Dr. Bitting's own testimony, to which the Appellate Panel was privy, supports the Appellate Panel's conclusion as well. When questioned by Dozier during his deposition, Dr. Bitting said he would defer to her current treating physician regarding her work restrictions or impairment rating because he had not evaluated Dozier in over two and a half years.

late Panel reviewed and considered before concluding employment was available that would permit Dozier to work within her five-pound weight restriction.

We also recognize conflicting expert testimony was presented as to whether Dozier was permanently and totally disabled. Although Dozier argues her vocational experts' findings that she was totally disabled is substantial evidence the Appellate Panel failed to consider, "[t]he mere possibility of drawing two inconsistent conclusions from the evidence does not prevent a finding from being supported by substantial evidence." *Olson*, 379 S.C. at 63, 663 S.E.2d at 501. Further, even if this court would have weighed the evidence differently, we are mindful that the Appellate Panel is the ultimate finder of fact, and when evidence is conflicting over a factual issue, the findings of the Appellate Panel are conclusive. *See Hamilton v. Martin Color–Fi, Inc.*, 405 S.C. 478, 485, 748 S.E.2d 76, 80 (Ct.App.2013). As a result, we affirm the Appellate Panel on this issue.

## 2. Res Judicata

Dozier claims the Appellate Panel erred in holding res judicata barred Dozier from raising the issue of CRPS/RSD before Commissioner McCaskill. We agree.

Res judicata encompasses both issue preclusion and claim preclusion. *Crestwood Golf Club, Inc. v. Potter*, 328 S.C. 201, 216, 493 S.E.2d 826, 834 (1997). However, res judicata is more commonly referred to simply as claim preclusion. *Garris v. Governing Bd. of S.C. Reinsurance Facility*, 333 S.C. 432, 449, 511 S.E.2d 48, 57 (1998). Res judicata, or claim preclusion, bars plaintiffs from pursuing a later suit when the claim (1) was litigated or (2) could have been litigated. *Crestwood Golf Club, Inc.*, 328 S.C. at 216, 493 S.E.2d at 835. Res judicata is shown if (1) the identities of the parties are the same as in the prior litigation; (2) the subject matter is the same as the prior litigation; and (3) there was a prior adjudication of the issue by a court of competent jurisdiction. *Johnson v. Greenwood Mills, Inc.*, 317 S.C. 248, 250–51, 452 S.E.2d 832, 833 (1994). As the first two issues are not in dispute, we find the dispositive question is whether the Appellate Panel previously adjudicated the issue of CRPS/RSD.

Dozier filed an initial Form 50, dated October 10, 2008, in which she claimed injury to both arms. On August 6, 2009, Dozier filed another Form 50, in which she claimed injuries to her arms, back, neck, and psyche. On November 3, 2009, Commissioner Huffstelter held a hearing on the issues raised by Dozier in her Form 50. At the hearing, he acknowledged Dozier requested "additional treatment for her arms, in particular for reflex sympathetic dystrophy [CRPS/RSD]...." Commissioner Huffstetler requested a proposed order finding Dozier suffered from CRPS/RSD. However, when the order was issued, Commissioner Huffstetler did not rule upon or acknowledge Dozier's claim for CRPS/RSD. Dozier appealed to the Appellate Panel and in the "Statement of the Case," the Appellate Panel acknowledged Dozier's claim for CRPS/RSD and her request for treatment. However, the issue of CRPS/RSD was not specifically enumerated in Dozier's issues on appeal, and it was never resolved in the Appellate Panel's November 2010 order. Neither party appealed that order.

On October 17, 2011, Dozier filed her third and final Form 50, seeking permanent total disability and alleging injuries to both her arms and her central nervous system. Commissioner McCaskill subsequently issued an order in May 2012, in which he found "[Dozier] cannot attempt to re-litigate the issue of whether or not she sustained related CRPS/RSD or the issue of whether she sustained related injuries to her neck/back and psyche under the doctrine of res judicata." We disagree.

Here, neither Commissioner Huffstetler's 2009 order nor the Appellate Panel's 2010 order demonstrate the issue of CRPS/RSD was addressed with finality, which is required to properly assert res judicata. *See Bennett v. S.C. Dep't of Corr.*, 305 S.C. 310, 312, 408 S.E.2d 230, 231 (1991) ("This Court has repeatedly held that, under the doctrines of res judicata and collateral estoppel, the decision of an administrative tribunal precludes the relitigation of the issues *addressed* by that tribunal in a collateral action." (emphasis added)); *Estridge v. Joslyn Clark Controls, Inc.*, 325 S.C. 532, 540, 482 S.E.2d 577, 581 (Ct.App.1997) (finding compensability of psychological injury in subsequent change of condition proceeding was not precluded by res judicata when prior order did not discuss or resolve employee's claim for psychological injury);

*cf. Johnson,* 317 S.C. at 251, 452 S.E.2d at 833 (finding employee's second attempt to establish compensability of her occupational disease before the single commissioner was barred by res judicata when the employee specifically raised the same issue and the single commissioner explicitly denied employee's claim in a prior unappealed order); *Mead v. Jessex, Inc.,* 382 S.C. 525, 534, 676 S.E.2d 722, 727 (Ct.App. 2009) (holding single commissioner's prior findings of non-compensability regarding hip and leg injuries were not appealed and therefore were barred by res judicata). As such, we find res judicata did not bar Dozier from bringing the issue of CRPS/RSD before Commissioner McCaskill.[6]

### 3. Estoppel and Waiver

Next, Dozier contends ARC is procedurally barred by the doctrine of estoppel from denying she suffers from CRPS/RSD. We disagree.

The elements of equitable estoppel for the party asserting the estoppel are the following: (1) a lack of knowledge and of a means of knowing the truth as to the facts in question; (2) a reliance upon the conduct of the estopped party; and (3) a prejudicial change in position. *Zabinski v. Bright Acres Assocs.,* 346 S.C. 580, 589, 553 S.E.2d 110, 114 (2001). The elements as to the party being estopped are the following: (1) conduct by the estopped party amounting to a false representation or a concealment of material facts; (2) an intention that such conduct be acted upon by the other party; and (3) actual or constructive knowledge of the true facts. *Id.* The party asserting estoppel carries the burden of proof. *Blue Ridge Realty Co. v. Williamson,* 247 S.C. 112, 122, 145 S.E.2d 922, 927 (1965).

Reviewing these elements, we find ARC's conduct does not merit the application of equitable estoppel. ARC approved Dr. Zgleszewski as Dozier's authorized treating physician during the pendency of her first appeal in January 2010. For over two years, ARC permitted Dozier to receive ongoing medical treatment, including three stellate ganglion blocks and

---

6. Our holding on this issue, however, does not necessitate reversal based on our finding that the Appellate Panel properly held, in the alternative, that Dozier did not establish she suffered from CRPS/RSD.

several carpal tunnel injections, in an effort to alleviate her pain and to rehabilitate her injuries. Although Dozier argues otherwise, we find ARC's actions of paying for Dozier's treatment during this time weighs against the application of estoppel. If ARC were trying to conceal Dozier's CRPS/RSD, we find it unlikely ARC would have authorized Dr. Zgleszekski as her treating physician or approved of her ensuing treatments. In addition, we are not convinced that ARC possessed actual knowledge that Dozier suffered from CRPS/RSD because the issue of compensability of her injuries, with the exception of her bilateral wrists, was a contested issue from the outset of this litigation. Because ARC does not meet the required elements as to the party being estopped, we hold the doctrine of equitable estoppel does not apply.

In the alternative, Dozier contends ARC waived its right to contest the compensability of her CRPS/RSD because it provided treatment for her CRPS/RSD for an uninterrupted period of 728 days. We disagree.

Waiver is a voluntary and intentional relinquishment or abandonment of a known right. *Eason v. Eason*, 384 S.C. 473, 480, 682 S.E.2d 804, 807 (2009). To waive a right, the party must have known of the right and known that the right was being abandoned. *Id.* The determination of whether one's actions constitute waiver is a question of fact. *Laser Supply & Servs., Inc. v. Orchard Park Assocs.*, 382 S.C. 326, 337, 676 S.E.2d 139, 145 (Ct.App.2009).

Without question, ARC admitted Dozier sustained repetitive trauma to both her arms. Despite accepting responsibility for Dozier's carpal tunnel syndrome, we find ARC did not waive its right to contest the compensability of CRPS/RSD before Commissioner McCaskill. At the 2009 hearing, Commissioner Huffstelter stated, "[ARC] admits an injury to the left arm only. They deny all other body parts . . . ." In its November 2011 Form 51, ARC again admitted injuries to Dozier's "bilateral wrists" but denied "all other alleged injuries." These denials argue against the application of waiver. Furthermore, we believe a finding of waiver under these circumstances would discourage employers from providing any level of treatment for a certain condition for fear that providing treatment for a potentially unrelated condition would irrevocably affect a

future finding on permanent disability. As such, we find ARC did not waive its right to contest the compensability of CRPS/RSD before Commissioner McCaskill.

## 4. CRPS/RSD

 Last, Dozier contends the Appellate Panel erred in finding she did not suffer from CRPS/RSD when she presented competent and substantial medical evidence to the contrary. We disagree.

The Appellate Panel was presented with conflicting medical testimony regarding whether Dozier suffered from CRPS/RSD. Dr. Zgleszewski, her authorized treating physician, opined she suffered from CRPS/RSD and stated he had been treating her for CRPS/RSD for over two years. Dr. Moore, who performed her carpal tunnel release surgery, also believed Dozier suffered from CRPS/RSD. However, Dr. Mancuso and Dr. Bitting concluded Dozier did not suffer from CRPS/RSD. In support of her medical opinion, Dr. Mancuso stated (1) there was no specific precipitating event; (2) both of her limbs were affected, which was not typical with CRPS/RSD; and (3) Dozier's skin was not overly dry or moist. Similar to Dr. Mancuso, Dr. Bitting testified during his deposition that he did not believe Dozier was suffering from CRPS/RSD. He based his opinion on her triple phase bone scan, which, in his opinion, was relatively normal, and Dozier's experiencing pain in both arms, as opposed to only one extremity. Further, Dr. Bitting stated CRPS/RSD typically was triggered by a specific traumatic event, and it was unlikely for Dozier to first experience symptoms almost two years after her accident.

Although we may have found differently from the Appellate Panel, when conflicting medical evidence is presented, this court must not substitute its judgment for that of the fact finder, which in this case was the Appellate Panel. *See Mullinax,* 318 S.C. at 435, 458 S.E.2d at 78 ("Where the medical evidence conflicts, the findings of fact of the [Appellate Panel] are conclusive."); *see also Lockridge v. Santens of Am., Inc.,* 344 S.C. 511, 518, 544 S.E.2d 842, 846 (Ct.App.2001) (finding when one doctor attributed employment to injury and another doctor could not testify unequivocally about the source

of an employee's injury, the Appellate Panel had the discretion to weigh the testimony and deny the employee's claim). Because of the conflicting evidence regarding Dozier's CRPS/RSD and our limited standard of review, we find the Appellate Panel did not err in this respect. *See Ballenger,* 209 S.C. at 466–67, 40 S.E.2d at 682 (finding the Appellate Panel is given discretion to weigh and consider all the evidence, both lay and expert, when deciding whether causation has been established and while medical testimony is entitled to great respect, the fact finder may disregard it if the record contains other competent evidence); *see also Jones v. Harold Arnold's Sentry Buick, Pontiac,* 376 S.C. 375, 378, 656 S.E.2d 772, 774 (2008) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (citation omitted)). As a result, we affirm the Appellate Panel's finding that Dozier did not suffer from CRPS/RSD.

**CONCLUSION**

Based on the foregoing, the decision of the Appellate Panel is

**AFFIRMED.**

KONDUROS and LOCKEMY, JJ., concur.