**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Freddie Tarver, Claimant, Appellant,

v.

Beech Island Rural Community, Employer, and Auto Owners Insurance Company, Carrier, Respondents.

Appellate Case No. 2019-000886

———

Appeal from The Workers' Compensation Commission

———

Opinion No. 2022-UP-363
Heard April 5, 2022 – Filed September 28, 2022

———

**AFFIRMED**

———

Hyman S. Rubin, Jr., of McDonald, McKenzie, Rubin, Miller & Lybrand, LLP, of Columbia, for Appellant.

James Paul Newman, Jr., of Howser Newman & Besley, LLC, of Columbia, and Andrew Elliott Haselden, of Howser Newman & Besley, LLC, of Charleston, for Respondents.

———

**PER CURIAM:** Freddie Tarver argues the Appellate Panel of the South Carolina Workers' Compensation Commission (the Appellate Panel) erred in (1) denying his claim for permanent and total disability or, alternatively, permanent partial

disability, and (2) denying him a separate award for his lower extremities.[1]  We affirm.

**Facts and Procedural History**

Tarver worked in water maintenance for Beech Island Rural Community in Aiken County from 1986 until his retirement in March 2015.  His job duties included operating equipment, reading water meters, performing repairs, and pumping water from holes.  At times, Tarver lifted 200-pound pipes with another worker.

On April 15, 2014, Tarver parked and exited his company truck to read a meter.  As the truck began rolling down a hill, Tarver attempted to stop it and was dragged approximately thirty feet.  Tarver sustained injuries to his back, pelvis, and teeth.  He was unable to get off the ground, was in extreme pain, and was bleeding.

An ambulance transported Tarver to University Hospital, which transferred him to Georgia Regents Medical Center for specialized trauma care.  He was diagnosed with an unspecified closed fracture of the pelvis; bilateral fracture of the pubic rami; closed fracture of the spine, sacrum or coccyx, without spinal injury; anemia from blood loss; soft tissue contusions; and a transverse lumbar process fracture.  Although his doctors initially thought Tarver would need surgery, they later determined surgery was unnecessary and discharged him three days after the accident.

For the next two months, Tarver had physical therapy.  He did not want to go to an inpatient rehabilitation facility because he wanted to keep costs down and because his wife, a nurse, could take care of him.  While out of work, Tarver received temporary total disability benefits.

On July 10, 2014, Tarver returned to work, but he was exhausted and in pain when he came home after his shifts.  Shortly after returning to work, Tarver received a raise because, as Tarver explained, "I do my work and I work hard."

On December 10, 2014, Dr. Daniel Westerkam conducted an independent medical evaluation of Tarver.  Tarver's primary complaint was lower back pain, but he had mild mid-back and hip pain as well.  Tarver reported taking Percocet and Dilaudid for severe pain as needed, usually twice a week, and other pain medications

---

[1] By letter dated June 10, 2022, Tarver informed this court of the withdrawal of his appeal of the Appellate Panel's calculation of his average weekly wage.

regularly. He reported having difficulty lifting and digging. Dr. Westerkam noted, Tarver "has continued to work on a daily basis, although at the end of the day sometimes he has significant pain." He stated, "The patient has full range of motion of the hips, knees, and ankles. The patient does have some pain with forward flexion and back extension, minimal pain to lateral flexion."

Dr. Westerkam described his impression of Tarver as:

> He appears to be at the maximum medical improvement as defined by the American Medical Associations' Guide to the Evaluation of Permanent Impairment, 5th Edition. Using these guides, I think he does qualify for an impairment based on the table 15-3 found on page 384. He will be placed in the diagnostic related estimate category III for the transverse process fracture. This would yield a 10% spine impairment, or a 13% lumbar regional spine impairment. I would recommend that he not lift more than 50 pounds and that he not do repetitive squatting. He can do occasional squatting. He should have no limitations with standing or walking.

On March 27, 2015, Tarver retired. He gave no reason when he submitted his notice of retirement to Beech Island.

On April 23, 2015, physical therapist (PT) Tracy Hill evaluated Tarver and opined he did not qualify for an impairment rating for his pelvic issues. Hill found Tarver qualified for a whole person impairment rating of 14%, which converted to a 16% lumbar spine impairment, and 5% lower extremity impairment of each hip due to limited hip flexion range of motion; PT Hill also found Tarver could do limited light work.

On September 4, 2015, Tarver's primary care physician, Dr. John Vehlky, evaluated Tarver for his reported moderate back pain. Dr. Vehlky diagnosed Tarver with midline low back pain without sciatica and observed Tarver exhibited decreased range of motion and tenderness in both hips and his lumbar back.

On December 18, 2015, Dr. Justin Hutcheson evaluated Tarver. Tarver reported pain to his back, both hips, and right thigh, with occasional numbness. Dr. Hutcheson diagnosed Tarver with spondylosis (age-related degeneration) to several vertebrae and opined Tarver was at maximum medical improvement (MMI). Dr.

Hutcheson commented, "Impairment – 14%, WPI = 16% lumbar spine, 5% lower extremity impairment rating each hip due to limited hip flexion range of motion." "Given his age, educational level and history of pelvis and lumbar fractures, I think he will have a real problem maintaining pace and perseverance in a competitive work environment at 40 hours/week." Dr. Hutcheson recommended Tarver continue with his home exercise plan and medication or undergo further testing to determine whether injections and durable medical equipment should be considered.

On December 31, 2015, Tarver filed a Form 50 seeking an award for permanent and total disability or, alternatively, permanent partial disability, due to the injuries to his neck, pelvis, hips, legs, shoulders, and teeth. Tarver claimed his average weekly wage was $1,166.58 from all sources. Respondents timely filed a Form 51 noting the evidence showed Tarver had reached MMI.

On January 26, 2016, vocational consultant Glen Adams conducted a vocational assessment for Tarver, classifying him as a "Construction Worker II" with a "very heavy" strength requirement but also classifying him as a "Meter Reader" with a "light" strength requirement. Adams found Tarver lacked the skills, knowledge, or abilities to engage in work similar to his previous work and there was no residual job market for him due to his vocational weaknesses, age, and reduced physical ability. The assessment classified him as "totally vocationally disabled" and "essentially functionally illiterate."

Respondents' vocational rehabilitation consultant, Jan Westmoreland, prepared an employment analysis and labor market survey that identified Tarver as physically capable of performing sedentary to light physical work. The report identified potential jobs for Tarver with payment ranges of $7.50 to $10.23 per hour, including retail salesperson, ticket taker, and shuttle driver, and stated:

> Upon review of available medical records, vocational interview, interest testing, education, employability analysis, labor market reviews, and published date, it is my opinion that Mr. Tarver remains employable. This assumes he can work part-time (20 hours) or full-time (40 hours) employment. After review of medical reports and my clinical interview, Mr. Tarver's physical capacity range appears to fall within the sedentary to light physical demand work capacity. He can anticipate earning from $7.25/hour to $8.00/hour.

On May 27, 2016, Dr. John Velky diagnosed Tarver with lumbar back pain with sciatica and ordered an MRI of the lumbar spine.  Dr. Velky reported, "This is a chronic problem.  The current episode started more than 1 year ago.  The pain is at a severity of 8/10.  The pain is severe.  The pain is the same all the time.  Stiffness is present all day."  On June 17, 2016, Tarver had a lumbar spine MRI.  Comparing the June 2016 MRI with the 2014 CT scan, Dr. Velky's notes state, "Impression: Diffuse degenerative disc disease with osteoarthritic changes of the articulating facet more prominent at the L5-S1."  He then referred Tarver for pain management.

In July 2016, PT Parik Patel evaluated Tarver, who presented with bilateral lower extremity radiculopathy and decreased range of motion, worse on the right side than the left.  He also suffered decreased bilateral lumbar range of motion with pain.  Patel observed Tarver had decreased core strength and opined he would benefit from skilled physical therapy, focused on core strengthening, to improve his functional mobility and reduce radiculopathy symptoms.

On September 12, 2016, Dr. Velky opined to a reasonable degree of medical certainty that "Mr. Tarver is most probably totally and permanently disabled from any full-time gainful employment."  Dr. Velky noted the overall deterioration in Tarver's health since 2014, particularly his residual lower back pain issues.

Tarver appeared for a September 27, 2016 hearing before a single commissioner, who found Tarver had a 25% permanent partial disability to the back, "which takes into account any and all radiculopathy."  The single commissioner denied Tarver's requests for permanent and total disability and permanent partial disability.  He found Tarver did not sustain compensable injuries to his teeth but suffered compensable injuries to his back and pelvis.  However, the single commissioner found Tarver was not permanently and totally disabled because when he returned to work on July 10, 2014, Tarver worked his regular duties.  The single commissioner further found Tarver had reached MMI and calculated his average weekly wage to be $1,037.41.  This average weekly wage did not include Tarver's income from either his plumbing or part-time ministry work because Tarver was still engaged in both jobs.

Tarver timely appealed to the Appellate Panel, which reversed the denial of compensation for the loss of Tarver's two front teeth and remanded the case to the single commissioner to analyze their compensability along with any disability.

On remand, the single commissioner found Tarver was entitled to compensation for "Twenty-five (25%) to the back to include radiculopathy, Two (2%) to the hip,

and 2 weeks for the loss of each tooth" under section 42-9-30 of the South Carolina Code (2015), which provides the schedule of and compensation for periods of disability.  He found Tarver was not entitled to recover under § 42-9-10 (total disability) or § 42-9-20 (partial disability).

Tarver timely appealed, and the Appellate Panel affirmed the single commissioner's order.  The Appellate Panel noted both Tarver's admission that he had no physician's excuse writing him out of work as well as the testimony of David Scott, Tarver's immediate supervisor, who testified he would have given Tarver a light duty job had he asked.  The Appellate Panel found Tarver returned to full-time regular duty employment on July 10, 2014, and continued working in that capacity until he voluntarily retired in March 2015.  It noted Tarver's vocational findings were rendered after he had been back at work for almost a year and almost two years after his accident.

**Standard of Review**

The Administrative Procedures Act (APA) establishes the standard for our review of Commission decisions.  *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981).  "In a workers' compensation case, the appellate panel is the ultimate fact-finder."  *Nicholson v. S.C. Dep't of Soc. Servs.*, 411 S.C. 381, 384, 769 S.E.2d 1, 3 (2015).  "Substantial evidence is 'not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that [the commission] reached or must have reached' to support its orders."  *Lewis v. L.B. Dynasty, Inc.*, 419 S.C. 515, 518, 799 S.E.2d 304, 305 (2017) (alteration by court) (quoting *Lark*, 276 S.C. at 135, 276 S.E.2d at 306).

**Law and Analysis**

**I.  Disability**

Tarver argues the Appellate Panel erred in affirming the single commissioner's denial of his claim for permanent and total disability because his injuries rendered him unable to work at the full-time heavy labor he performed his entire career.  Alternatively, Tarver argues he is entitled to an award of permanent partial disability.

"The term 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other

employment." S.C. Code Ann. § 42-1-120 (2015). "The extent of disability is a question of fact to be proved as any other fact is proved." *Watson v. Xtra Mile Driver Training, Inc.*, 399 S.C. 455, 463, 732 S.E.2d 190, 194 (Ct. App. 2012). A claimant has the burden to establish permanent and total disability. *See Dent v. E. Richland Cnty. Pub. Serv. Dist.*, 423 S.C. 193, 201, 813 S.E.2d 886, 890 (Ct. App. 2018). "Further, even if this court would have weighed the evidence differently, we are mindful that the Appellate Panel is the ultimate finder of fact, and when evidence is conflicting over a factual issue, the findings of the Appellate Panel are conclusive." *Dozier v. Am. Red Cross*, 411 S.C. 274, 289, 768 S.E.2d 222, 229–30 (Ct. App. 2014).

Here, substantial evidence in the record supports the Appellate Panel's finding that Tarver was not permanently and totally disabled as a result of his April 2014 injuries. Tarver returned to work two months after his accident, and for nine months he performed the same job duties, with the same crew, under the same supervisor as before the accident. Although he was experiencing lower back, leg, and hip pain, he admitted his lower back only hurt at the end of the work day. At his 2015 deposition, Tarver stated, "Especially, you know, like I can go to work. I'm—I do my job, but I hurt. Even sometimes when I'm at work, I'm—I'm hurting." Tarver did not give any reasons for retiring when he turned in his retirement notice. However, before the single commissioner, he testified, "I just couldn't do it anymore; I just got—got tired of hurting every day."

Tarver admitted no doctor gave him work restrictions, other than the two-month period for which he was out of work completely. He testified he did not tell his employer he was unable to perform the work because he was concerned he would lose his job and he did not want others to think he could not do the work. Tarver continued to perform the same work when he returned in July 2014 as he did before the accident, and he did not ask for any accommodation or a light duty job. Upon his retirement from Beech Island, Tarver was still operating his plumbing business and working as a part-time minister.

According to Tarver's supervisor, Scott, it was not unusual for employees to complain of soreness after big projects or repairs. When Tarver returned to work, he did not indicate his soreness was anything other than that typically associated with the job, and Scott recalled Tarver experienced soreness prior to the accident as well. Scott admitted part of the job required heavy lifting and noted it often took all four or five men on a crew to lift heavy objects. According to Scott, Tarver would lift one-hundred-pound water meters, but that was "very seldom."

The Appellate Panel's finding that Tarver's condition worsened after he voluntarily retired is also supported by the evidence. In December 2014—after Tarver had again been working in his normal capacity for six months—Dr. Westerkam observed Tarver had full range of motion, could lift up to fifty pounds, had no limitations walking or standing, and could handle occasional squatting.

While we recognize conflicting evidence exists in the record, such does not render the Appellate Panel's findings unsupported by the evidence. *See Dozier*, 411 S.C. at 289, 768 S.E.2d at 229–30 ("[W]hen evidence is conflicting over a factual issue, the findings of the Appellate Panel are conclusive.").

## II. Award for Lower Extremities

Tarver next argues the Appellate Panel erred in denying him a separate award for his lower extremities when the evidence established he sustained a 5% permanent disability to each lower extremity. In support of his argument, Tarver cites the Hill and Hutcheson evaluations referencing "a 5% lower extremity impairment for each hip due to limited hip flexion range of motion."

The Appellate Panel assigned Tarver a "Twenty-five (25%) permanent partial disability to the back to include radiculopathy" as well as 2% to the hip under § 42-9-30. As substantial evidence in the record supports the Appellate Panel's finding, we find no error.

## CONCLUSION

Based on the foregoing, the order of the Appellate Panel is

**AFFIRMED.**

**THOMAS, MCDONALD, and HEWITT, JJ., concur.**